IN THE U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| vs. | ) | CASE NO.:  2:22cr81 |
| | ) | |
| ROBERT SCOTT MORRIS, | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENSE POSITION WITH RESPECT TO SENTENCING FACTORS

COMES NOW the defendant, Robert Scott Morris, by undersigned counsel, Greg D. McCormack and in accordance with § 6A1.2 of the Sentencing Guidelines and Policy Statements and this Court's policy regarding guidelines sentencing, the defense hereby represents that it has received and reviewed the Presentence Investigation Report and Addendum thereto prepared by the United States Probation Officer.  There are no unresolved defense objections to the Amended Presentence Investigation Report, ECF Document # 26.

## APPLICATION OF THE 18 U.S.C. §3553 SENTENCING FACTORS SUPPORT A VARIANT SENTENCE

Pursuant to the provisions of §5K2.0(b) of the Federal Sentencing Guidelines Manual, and the factors to be considered in imposing a sentence as set forth in 18 U.S.C. §3553 (b) (2) (A)(ii), the defendant, Robert Scott Morris, by counsel, respectfully submits his request that the Honorable Court grant a significant variance from the applicable sentencing guidelines to impose a sentence which is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. §3553(a)(l ) and (2).  Counsel for Robert Scott Morris submits that the appropriate sentence in this matter is a period of imprisonment for sixty (60) months, followed by five (5) years of supervised release.

While the Court must consider the Guidelines calculation as part of the sentencing process, the Guidelines merely "serve as one factor among several courts must consider in determining an appropriate sentence." *Kimbrough v. United States,* 552 U S. 85, 90 (2007). Rather than simply impose a sentence within the Guidelines range, the Court must consider the whole range of factors listed in 18 U.S.C. §3553 and determine the sentence that is "sufficient, but not greater than necessary" to accomplish the goals of sentencing. *Id.* at 101 (quoting 18 U.S.C. §3553). Indeed, the Court may not even "presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007). The sentencing court has wide latitude to impose a sentence below the Guidelines range, "perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita v. United States,* 551 U.S. 338, 351 (2007). Here, the 18 U.S.C. §3553(a) factors overwhelmingly support a sentence far below the suggested Guidelines Range. A sentence of imprisonment for sixty (60) months, followed by five (5) years of supervised release would be "sufficient, but not greater than necessary" to satisfy the statutory factors.

### DEFENDANT'S HISTORY AND CHARACTERISTICS:

In determining the particular sentence to be imposed, 18 U.S.C. §3553 (a)(l) requires consideration of the "history and characteristics of the defendant."   Robert Scott Morris is 37 years of age and is a resident of Virginia Beach, Virginia.  Robert is the son of Steven Robert Morris and Deborah Eileen O'Brien and was born on December 7, 1985 in Woodstock, Illinois.  Robert's parents separated when he was approximately age 5 and subsequently divorced.  Robert lived primarily with his mother although both parents remained equally involved with his upbringing.  Both of Mr.

Morris' parents remarried and he maintained a good relationship with his parents and step-parents. Robert has two sisters, his full sister, Heather Michelle Barlow, age 34, resides in Georgetown, Tennessee and a maternal half-sister, Ashley Ann Ebert, age 29, who lives in Loves Park, Illinois. Robert graduated from Eagle Valley High School in Gypsum, Colorado in May 2004. In October of 2004, Robert enlisted in the U.S. Navy, separating in December of 2011 in the rank of E4 with an Honorable Discharge. In October 2008 Robert transferred from Active Duty to the U.S. Navy Reserves where he remained on active duty until December 2011 when he received an honorable discharge. During the time Robert was out of the miliary he worked at various jobs until he rejoined the U.S. Navy in November 2017. Robert received Non-Judicial Punishment and was administratively separated from the Navy for misconduct (insubordinate conduct towards a Petty Officer, sexual harassment and false official statement) in January 2021 with a General under Honorable Conditions discharge making him ineligible for reenlistment.

While Mr. Morris was in the United States Navy he showed strong leadership and a can do attitude. In his evaluation dated March 14, 2020, he was noted as being "*A forthright and dependable performer with demonstrated potential. A proven asset who is recommended for Petty Officer First Class.[1]*" Mr. Morris was also noted as, "*Displaying the confidence needed to face the toughest challenges.[2]*" While on active duty and in the Inactive Ready Reserve (IRR) Robert worked to obtain his Bachelor's Degree from Colorado Christian University where he graduated in May 2012 with a Bachelor of Arts in Youth Ministry. After separating from the Navy, Robert further pursued a Bachelor's Degree in Cybersecurity from ECPI University, but withdrew subsequent to initiation of the criminal charges by the Commonwealth of Virgina.

---

[1] *See* Enclosure E: Evaluation Report-19FEB26 to 20MAR15
[2] *See* Enclosure E: Evaluation Report-09MAR16 to 08DEC15

While in the U.S. Navy, Mr. Morris received the following awards and decorations:

1. Navy Battle "E" Ribbon with 2 Silver "E" Devices
2. Navy Good Conduct Medal with 2 Bronze Starts
3. National Defense Service Medal
4. Global War of Terrorism Service Medal
5. Humanitarian Service Medal
6. Navy Sea Service Ribbon with 2 Bronze Stars
7. Navy and Marine Corps Overseas Service Ribbon with 2 Bronze Stars
8. Navy Rifle Marksmanship Ribbon – Sharpshooter
9. Navy Pistol Marksmanship Ribbon - Sharpshooter
10. Letter of Commendation Flag
11. Enlisted Surface Warfare Specialist
12. Letter of Appreciation

Shortly after his arrest by Virgina Beach Police on February 8, 2022 and subsequent release from the Virginia Beach Correctional Center on February 10, 2022, Robert secured the services of Dr. Alana Hollings, Psy.D., C.S.O.T.P., a certified Sexual Offender Treatment Provider, to address the underlying issues that lead to the subject conduct and charged offenses.  Since February 17, 2022 Robert attended every other week counseling appointments through June 2022 and then increased his appointments with Dr. Hollings to four times per month and attended all appointments continuing through to his date of sentencing.  Robert has embraced treatment from the onset and gained insight into himself and his behaviors and how his past has affected him today.[3]

With the assistance and guidance of Dr. Hollings, Robert has been able to fully recognize and appreciate the adversity and impact suffered by the victims who, as children, are subjected to the abuse that is the cornerstone of child pornography.   These sessions have been invaluable to him, and he has learned much through his therapy, and is certainly looking forward to continuing all required and recommended treatment as it relates to him continuing to develop a deeper understanding of his actions which led him to commit the instant offense.  He stands deeply

---

[3] *See* Enclosure I: Letter from Dr. Hollings

committed to a future without any involvement of pornography of any manner.  Robert will readily avail himself of the opportunity to participate and excel in any and all sex-offender treatment and therapy during federal confinement and upon his subsequent release and will continue to strictly comply with all terms of supervised release.

In addition to immediately securing counseling and treatment with Dr. Hollings, Robert sought out other community and support activities as part of his personal recovery plan.  Robert has also participated in the Sex Addicts Anonymous program, and then switched to the Celebrate Recovery program attending meetings 4 times a week while the charges were pending in state court and once the charges were moved to federal court it was reduced to twice a week from February 2022 and continuing throughout his pretrial release.  Robert has firmly relied on his faith and ministry to provide the strength he has needed to face his charges and to overcome them.

It is well recognized in consideration of the sentencing factors under 18 U.S.C. §3553 that family ties "are pertinent to crafting an appropriate sentence." *United States v. Nellum,* No. 2:04-CR-30, 2005 BL 88941, at *4 (N.D. Ind. Feb. 3, 2005).   Robert shares a close relationship with his parents and grandparents[4].  *See United States v. Myers,* 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005) (imposing non-guidelines sentence where defendant had "been a steadfast and guiding presence his family's life").   *See, e.g., United States v. Schroeder,* 536 F.3d 746 (7th Cir. 2008) (remanding for resentencing where the sentencing court did not address defendant's claim of extraordinary family circumstances: "[w]hen a defendant presents an argument for a lower sentence based on extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on his family members*")*.  Robert's family and friends are deeply entrenched in their efforts to provide him support while he is undergoing any period of restraint, and that support will continue in full

---

[4] *See* Enclosure A (16-19): Character Letters from Immediate Family

force to assist him as necessary in the future.  The steadfast and guiding presence of his family is a proper consideration in imposing a below Guideline sentence.  *See United States v. Myers*, 353 F, Supp. 2d. 1026, 1031 (S.D. Iowa 2005).

Throughout Robert's life he has been engaged in church activities.  He continues his religious studies and has met many friends through his Celebrate Recovery support group which is a program for men struggling with various forms of addiction to pornography.  The letters of support for Robert from family, friends and associates is heartwarming[5] – these people know Robert, know him to be a man who as expected has fully accepted responsibility for his conduct, and who has the ability to do what is necessary to fully rehabilitate himself and return from confinement as a better man.  *See also Benkahla,* 501 F. Supp. 2d. at 760 (awarding downward variance based on, among other things, defendant's "strong, positive relationships with friends, family and the community."); *United States v. Harding*, No. 05 CR 1285-02, 2006 WL 2850261, at *5 (S.D.N.Y. Sept. 28, 2006) (awarding a below Guidelines sentencing taking "note of the significant network" ready to support the defendant.)

While many defendants in Robert's position simply bide their time either in custody or on pretrial release until their sentencing date, Robert took the initiative to begin his lengthy recovery and treatment journey.  Important to note is the timing in this – his efforts of self-improvement were initiated immediately upon being released on pretrial supervision in Virginia Beach, well in advance of sentencing and treatment options imposed upon him by the Bureau of Prisons and/or Probation. In February 2022, Robert started sex-offender-focused therapy and treatment with Dr. Alana Hollings at the Center for Advanced Psychological Services, PLLC, and has continued throughout being monitored by Probation.  Robert expresses an immeasurable shame and remorse for his

---

[5] *See* Enclosure A: Character Letters

actions which have placed himself in this situation, as well as how his immediate and extended family now views him because of those actions.  He is constantly under a cloud of sorrow for the massive impact his actions have had and will continue to have on his family, now and for the rest of their lives.   Additionally, he understands that a condition of his eventual supervised release will be mandated sex-offender treatment and therapy, which he looks forward to fully engaging in.

During his time on pretrial release and being closely supervised by Pretrial Services, Mr. Morris has clearly demonstrated his ability to comply with all of the strenuous requirements expected of him.  There have been zero issues while he has been on pretrial release, something that reflects highly upon his character before this Court.  Counsel firmly believes and submits that any defendant's past performance during (pretrial, in the instant matter) supervision is the strongest predictor of future compliance with terms of supervision.  Robert is an integral part of his community and is committed to participate and excel in any and all sex-offender and mental health treatment during confinement and upon his release.

Robert previously was hospitalized at a civilian mental health facility for a few days due to a panic attack he had a short time after joining the military when he was 19.  He has had no further mental health issues.  While on pretrial supervision, Robert's appointments in person with Dr. Hollings provided him an outlet to speak freely regarding his past and possible physiological issues that came with that.  Robert has been able to set boundaries with his family members who have been intrusive and detrimental to him in other ways.  Robert has never had any substantive history with narcotics, and rarely consumed alcohol.  It is notable that there were zero positive drug screens while on pretrial release.  During his military service, Robert encountered numerous medical issues.  Upon

separating from the Navy, he was provided with a 100% disability rating by the Veteran's Administration.

It is well recognized in consideration of the sentencing factors under 18 U.S.C. §3553 that family ties "are pertinent to crafting an appropriate sentence." *United States v. Nellum,* No. 2:04-CR-30, 2005 BL 88941, at *4 (N.D. Ind. Feb. 3, 2005).  Additionally, in determining the particular sentence to be imposed, 18 U.S.C. §3553 (a)(l) requires consideration of the "history and characteristics of the defendant." As discussed, Robert shares an extremely close relationship with the members of his church and Celebrate Recovery group, and they have been driving force that has allowed him to accept and manage his past and the future that he will have. *See United States v. Myers,* 353 F. Supp. 2d 1026, 1031 (S.D. Iowa 2005) (imposing non-Guidelines sentence where defendant had "been a steadfast and guiding presence his family's life"). *See, e.g., United States v. Schroeder,* 536 F.3d 746 (7th Cir. 2008) (remanding for resentencing where the sentencing court did not address defendant's claim of extraordinary family circumstances: "[w]hen a defendant presents an argument for a lower sentence based on extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on his family members*"). See also Benkahla,* 501 F. Supp. 2d. at 760 (awarding downward variance based on, among other things, defendant's "strong, positive relationships with friends, family and the community."); *United States v. Harding*, No. 05 CR 1285-02, 2006 WL 2850261, at *5 (S.D.N.Y. Sept. 28, 2006) (awarding a below Guidelines sentencing taking "note of the significant network" ready to support the defendant.)  Robert's family and community are deeply entrenched in their efforts to provide him support while he is incarcerated, and that support will continue in full force until and once he can come home to them.  The steadfast and guiding presence of his family and recovery group is a proper consideration in imposing a below-Guideline sentence.  *See United States v. Myers*, 353 F, Supp. 2d. 1026, 1031 (S.D. Iowa 2005).

## <u>NATURE AND CIRCUMSTANCES OF THE OFFENSE</u>

The nature and circumstances of Robert's offense conduct, while very serious, are less egregious than many similarly-situated defendants facing the same offense at sentencing. Counsel for the Defendant does not wish to, nor will it attempt to label the facts of this case as "run of the mill," as no cases involving such material can reasonably be labeled as such. However, the specific nature and circumstances of this offense are significantly less serious than many which come before the Court.

The investigation into this matter began in the same manner as do many child pornography investigations: law enforcement client program used to monitor the trafficking of images of minors exchanging in sexually explicit conduct (SEC) occurring over peer-to-peer "P2P" file-sharing networks. Law enforcement came across an IP address which offered suspected child pornography for download.   After downloading and confirming the images to be child pornography, the officers followed with subpoenas to the internet service provider to establish the internet subscriber, which they later learned to be Robert Morris.

On February 8, 2022, upon execution of a search warrant by Virginia Beach Police Department SWAT, Robert was taken into custody.  Mr. Morris was pulled over by police on his way to work and was not home during the execution of the search warrant.  He subsequently waived his <u>Miranda</u> rights and cooperated with Detective Hand, VBPD, providing statements against his legal interests.

Critical to the analysis of the facts and circumstances of this offense are several mitigating factors.  In Robert's case, he has been attributed with 897 images, which is significantly lower than frequently seen in similar cases. Robert was not engaged in "chats" with others involved in the possession of child pornography via messaging applications, unlike many

similarly-charged defendants.  There was no evidence that Robert was intentionally distributing any of the subject images.  There was no online solicitation of minors, and there are zero allegations of hands-on physical sexual abuse of children.  Additionally, at no point in the investigation did Robert attempt to obstruct justice.  Further, it is important to note that upon being interviewed in this investigation, Robert thereafter completely ceased his illegal conduct, as opposed to many such suspects who continue the conduct after the initial interview and search are conducted.

Of utmost importance, the defense submits, is the fact that Robert now fully acknowledges the wrongfulness of his conduct, and that through his current and future therapy, counseling, and sex offender treatment, he will continue to improve his thought processes and judgment, ultimately culminating in the successful release from sex offender treatment at some point in the future.

### THE SENTENCING COMMISSION AND CHILD PORNOGRAPHY GUIDELINES

In determining an appropriate sentence, the Court must "consider all of the 18 U.S.C § 3553(a) factors," "make an individualized assessment based on the facts presented," and explain how the facts relate to the purposes of sentencing.  *Pepper v. United States*, 131 S. Ct. 1229, 1242-43 (2011).  The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43.  An inherent aspect of the applicable law is the authority of this Court to disagree with a Guideline as a matter of policy.  Because "the Guidelines are now advisory…as a general matter, courts may vary based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. 85 at 101-02 (2007).  As the Supreme Court held in *Kimbrough*, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse

of discretion for a District Court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary" to achieve 18 U.S.C. § 3553(a)'s purposes." *Kimbrough*, 552 U.S. at 91, 109-10.

The Sentencing Commission released a report to Congress on the Child Pornography Guidelines for non-production offenders in February 2013. S*ee* U.S. Sentencing Commission, *Report to the Congress: Federal Child Pornography Offenses* (2012). The Commission explained that it compiled the report in large part due to the increasing rate of below-Guideline sentences for offenders sentenced under USSG § 2G2.2, pursuant to its statutory duty to "consider whether the Guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id.* at ii, and because "as a result of recent changes in the computer and Internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id* at ii, 323.

The Commission reported that some offenders have "non-sexual motivations for viewing child pornography," including "avoidance of stress or dissatisfaction with life." *Id.* at 79. It reported that recent studies show that "appropriate 'treatment interventions…are associated with lower rates of recidivism—some of them very significant,'" *id.* at 278 & n.31 (quoting Center of Sex Offender Management, *The Comprehensive Approach to Sex Offender Management* 5 (2008)), and that "[polygraph] testing of sex offenders is widely accepted by experts as a critically important corollary of effective treatment." *Id.* at 282.

The report of the Commission acknowledged that the enhancements applicable in the instant case pertaining to use of a computer, character of the images and number of images effectively applies to most offenders, resulting in the Guidelines' failure to differentiate among

11

offenders in terms of their culpability.  As a result, sentencing enhancements that originally were intended to provide additional proportional punishment for aggravating conduct now routinely apply to the vast majority of offenders. *id*. at xi.  The Commission concluded that the current sentencing scheme in §2G2.2 places a disproportionate emphasis on outdated measures of culpability regarding offenders' collecting behavior and insufficient emphases on offenders' community involvement and sexual dangerousness. *Id.* at xx; *see also id.* at 321.  The Commission asked Congress to enact legislation to provide it authority to amend the Guidelines that were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines, *Id.* at xviii, 322 and recommended that the specific offense characteristics related to the types and volume of images, distribution, and use of a computer be updated to account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images, and other aspects of an offender's collecting behavior reflecting his culpability to reflect offenders' use of modern computer and Internet technologies. *Id.* at xviii-xix, 322-23.

The Sentencing Commission followed the 2012 report with an updated report released in June 2021, which focused on federal child pornography case data from fiscal year 2019.  The updated report concluded that "A central theme of the Commission's 2012 *Child Pornography Report* remains true today: the sentencing enhancements in §2G2.2 have not kept pace with technological advancements.  Facilitated by technology, child pornography offenses increasingly involve images in great quantities and of a graphic nature, often depicting the youngest of the victims.  These factors are already accounted for in §2G2.2 by a series of enhancements that were initially added to target more serious offenses and more culpable offenders.  However, the conduct covered by four of the six enhancements – accounting for a combined 13 offense levels – has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2."

S*ee* U.S. Sentencing Commission, *Federal Sentencing of Child Pornography Non-Production Offenses* (2021), at 68.  The 2021 report delves into key findings of case statistics from fiscal year 2019, which presents a striking view of the overwhelming ineffectiveness of the current sentencing guidelines, in particular the various enhancements for "aggravating" factors.  Over half (52.2%) of non-production child pornography offenses in fiscal year 2019 included images or videos of infants or toddlers, and nearly every offense (99.4%) included prepubescent victims.  In 2019, over 95 percent of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim (images depicting victims under the age of 12).  The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84% of cases) or having 600 or more images (77.2% of cases) were also applied in most cases.  *id.* at 4.  The 2021 report also addresses an important issue for consideration by the Court when fashioning a sentence – recidivism.   Out of the 1,093 non-production child pornography offenders involved in the study, 72.4% of them had no recidivism within three years of release.  Out of the 27.6% recidivism rate, 16% were "general recidivism" – not a sex offense or offense related to status as a sex offender.  7.3% had failed to register as a sex offender, and only 4.3% had an issue relating to sexual recidivism.  *id.* at 65.

In the case of Robert Scott Morris, the sentencing enhancements increase the base offense level of 22 under USSG § 2G2.2(a)(2) to a total offense level of 35.  Mr. Morris has been afforded a three (3) point reduction into his offense level because he has accepted responsibility for the offense as well as assisted authorities in the prosecution of his own misconduct.  While Mr. Morris does not dispute the applicability of the enhancements under the current Guidelines, it is submitted that 13 enhancement points for an offense involving a minor who had not attained the age of 12, knowingly engage in distribution, sadistic or masochistic conduct, use of a computer

and 600 + images are applicable to conduct that are inherent to the underlying offense itself, and should not be considered as aggravating factors warranting enhancement under the Guidelines.[6] If the Court were to consider the Guidelines minus those aforementioned enhancements which are present in most cases in which defendants are similarly charged, the total offense level would be 22 minus the 3 point reduction for acceptance of responsibility, equaling a total offense level of 19, resulting in a guidelines range of 30 - 37 months, which is below the mandatory minimum sentence of 60 months.   The Defense accordingly submits that the cumulative enhancements which raise the score to a total offense level of 32 result in a Guideline range that is overly severe in view of the nature and circumstances of the subject offense committed by Robert Scott Morris as well as the history and characteristics of Mr. Morris.

## ARGUMENT IN SUPPORT OF VARIANCE

Counsel for the Defendant Robert Scott Morris respectfully submits that a sentence of imprisonment for sixty (60) months, followed by five (5) years of supervised release would be "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).   The sentencing factors which the Court must consider are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) need for the sentence to (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kind of sentences available; (4) the sentencing range established for the type of offense committed by the defendant as set forth in the United Stated Sentencing

---

[6] 2G2.2(b)(2);2G2.2(b)(3)(F); 2G2.2(b)(4); 2G2.2(b)(6)

Guidelines; (5) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

Fashioning a just sentence cannot be reduced to a mere arithmetical exercise. Reliance solely on numbers, quantities, offense levels, criminal history categories and matrixes produces an illusory precision that obscures the fact that sentencing, in the end, must involve the exercise of judgement, i.e. a judge's discerning opinion that results from identifying and weighing fairly all of the factors relevant to achieving the statutory sentencing goals.  See *United States v. Biheiri*, 356 F. Supp. 2d 589 (E.D.Va 2005).

Robert is fully cognizant of the fact that this is a not a victimless crime and that significant impact and harm is inflicted upon the victims depicted in the pornographic images.  He has discussed this with his family, recovery group, counsel, and most importantly Dr. Hollings, and he has reached a clear understanding of how having others view these images continues to negatively impact the child victims, as well as their families.  This understanding was reached on his own and has been furthered during discussions with counsel, his past ten months of sex-offender-specific mental health treatment, and upon reflection while awaiting sentencing.

Robert is also fully aware of the fact that regardless of the term of incarceration imposed upon him, he faces a lifetime of registration as a sex offender, and of having a serious federal felony conviction follow him for life.  He understands the reality that, even should the Court concur with counsel's recommendation for a sentence of imprisonment for sixty (60) months, followed by five (5) years of supervised release, he is effectively being handed a life sentence of being a convicted felon and registered sex offender.  It is with a deep conscious that he realizes the impact that registration will have upon his family and community due to the release of that

information to the public – they too will have to deal with the consequences of his conduct for many years to come.   Courts have recognized the implication as to the serious collateral consequences inherent with a conviction of this nature and have varied downward on this basis. *See e.g. U.S. v Pauley*, 511 F.3d 468,474-75 (4th Cir. 2007).  As a federal felon and registered sex offender, Mr. Morris will be dealing with the consequences of his conduct for the rest of his life. Given these severe penalties, Mr. Morris' lack of any similar criminal history, and his demonstrated exemplary amenability to treatment and court supervision, it is highly unlikely that he will violate the law again.

The issue of specific deterrence is a sentencing factor for consideration under 18 U.S.C. § 3553 (a)(2)(C).  The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects…Three National Academy of Science panels reached that conclusion, as has every major survey of the evidence."); David Weisburd *et al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010)

(study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year timeframe").

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level…While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sent'g Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 15 (2004) ["U.S. Sent'g Comm'n, *Measuring Recidivism*"]. *See also* Part IV.A.3, *infra*. And according to "the best available evidence…prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011). Nor does lengthy imprisonment of child pornography possessors have any deterrent or preventive effect on the industrial production or dissemination of child pornography. This is in part because the production and dissemination of child pornography is a widespread, international problem. There is no evidence "remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet." *Beiermann*, 599 F. Supp. 2d at 1103; *id.* at 1103-04 ("[W]e cannot sentence Internet users and sharers of child pornography fast enough or long enough to make a dent in the availability of such material on the Internet," and while deterrence is a "laudable" goal, it "is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of."). The Commission acknowledges that there is no social science research supporting the theory that criminal

punishments "have affected commercial or non-commercial 'markets' since the advent of the Internet and P2P file-sharing." *Child Porn Report* at 98.

While the defense is cognizant that Mr. Morris has plead guilty to receipt of child pornography, the underlying issue is his possession of child pornography. The primary assumption underlying Congress's actions with respect to the child pornography guidelines has been that possessors of child pornography are likely to sexually abuse children as stated *supra*. This belief is contrary to the empirical research in general and is wholly unjustified based on the evidence in this case.

Current empirical research demonstrates that "first-time child pornography possession only offenders appear to be very low risk of sexual recidivism [of any kind], in contrast to those with any prior or concurrent criminal convictions or those who engage in other sexual offending (e.g., attempted or actual contacts with a child, production of child pornography)," Written Statement of Michael C. Seto, Ph.D., C. Psych. before the U.S. Sent'g. Comm'n at 4 (Feb. 15, 2012),[7] and "online offenders who had no history of contact offenses almost never committed contact sexual offenses." Michael C. Seto *et al.*, *Contact Sexual Offending by Men With Online Sexual Offenses*, 23 Sexual Abuse 124, 137 (2011); *see also* Written Statement of Richard Wollert, Ph.D. before the U.S. Sent'g. Comm'n, at 14-17, 21-22 (Feb. 15, 2012) (reporting that in his study of 72 federal child pornography offenders under supervision, including three production offenders, with varying criminal histories, two were arrested for possessing child pornography and none were arrested for a contact offense within four years);[8] Helen Wakeling *et*

---

[7] Available at http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/ 20120215-16/Testimony_15_Seto.pdf.

[8] Available at http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/

*al.*, *Comparing the Validity of the RM 2000 Scales and OGRS3 for Predicting Recidivism by Internet Sexual Offenders*, 23 Sexual Abuse: J. Res. & Treatment 146, 164 (2011) (child pornography offenders "do not, as a group, present a significant risk of escalation to contact sexual offenses."); Jérôme Endrass *et al.*, *The Consumption of Internet Child Pornography and Violent Sex Offending,* 9 BMC Psychiatry 43 (2009) (study that followed 231 child pornography offenders for six years after initial offenses found that only two offenders (0.8%) committed a contact offense, and only nine offenders (3.9%) committed a non-contact sexual offense, and concluded that "the consumption of child pornography alone does not seem to represent a risk factor for committing hands-on sex offenses...at least not in those subjects without prior convictions for hands-on sex offenses"); Michael C. Seto & Angela W. Eke, *The Criminal Histories and Later Offending of Child Pornography Offenders,* 17 Sexual Abuse 201, 207-08 & tbl.III (2005) (finding that 1.3% of those who had committed child pornography offending only recidivated with contact sex offenses; "our finding does contradict the assumption that all child pornography offenders are at very high risk to commit contact sexual offenses involving children."); L. Webb *et al.*, *Characteristics of Internet Child Pornography Offenders: A Comparison with Child Molesters*, 19 Sexual Abuse 449, 463 (2007) (finding Internet-only offenders "significantly less likely to fail in the community than child molesters," and concluding that "by far the largest subgroup of Internet offenders would appear to pose a very low risk of sexual recidivism"). As one district court recently put it, "the empirical literature [] generally concludes that there is little – if any – evidence of a direct correlation between viewing child pornography and the viewer's commission of 'contact' sexual offenses." *Marshall*, 870 F. Supp. 2d at 492.

---

20120215-16/Testimony_15_Wollert_2.pdf.

Additionally, while it is impossible to predict the actual impact of a sole sentence on an individual or the mass market of child pornography viewers, it is certainly common knowledge that a lifetime requirement to register as a sex offender, a lifetime being branded as a convicted felon, and a requirement for extensive post-release supervision *should* in and of themselves be an adequate general deterrent.  If one were to assume that such viewers were rational individuals, then it is not impossible to believe that they would not want to risk being compelled to list their home and work address, alongside their photograph and other identifying information, on publicly-accessible registries, nor would they readily be willing to forgo access to the general employment market.

18 U.S.C. §3553(a)(2)(C) mandates that the need to protect the public from further crimes of the defendant be considered in fashioning an appropriate sentence.  The following factor, to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, is most easily addressed in the same breath.  At some point, Mr. Morris will have served his sentence and will be released from prison.  The defense thus submits that it is not the length of the sentence which is important, but what transpires during that sentence and during the period of post-release supervision and/or probation that is important.  Anyone – an alcoholic charged with DUI, a drug addict charged with possession of heroin, or a person charged with possession of child pornography – can be sentenced for a lengthy term and upon release fall back into the same behavior if the underlying issues are not addressed appropriately.  The key to eliminating or reducing that risk substantially is the treatment they receive while incarcerated and/or upon their release while they are being closely supervised.  The goal of this sentencing purpose is to protect the public indefinitely, not to simply keep them safe until a defendant is released.  Again, it is critical to note that Robert has proactively begun this

treatment process on his own, ten months ago.  Even during a sixty-month prison sentence, Robert will be subjected to intense treatment and behavioral restructuring by the Bureau of Prisons and/or United States Probation, and he will be required to strictly maintain all follow-up treatment as required by his probation officer and to his credit, he firmly embraces the opportunity to do so.

As the Court is aware, the national trend shows that courts are inclined to impose sentences well below the applicable guideline range in cases such as this. "In recent years, defendants sentenced under the non-production child pornography guidelines have received sentences outside of the applicable guideline ranges more frequently than defendants in all other major types of federal criminal cases." United States Sentencing Commission, Report to Congress: Federal Child Pornography Offenses 7 (2013). For instance, in 2011, less than one-third of non-production child pornography defendants received a guideline sentence. *Id*.

In addressing the provisions of 18 U.S.C. § 3553(a)(6) pertaining to the need to avoid unwarranted sentence disparities among defendants with similar records who have been convicted of similar conduct, the defense would ask the Court to consider other cases with similarly-situated defendants.  The defense submits that a sentence of imprisonment for sixty (60) months, followed by five (5) years of supervised release is sufficient, but not greater than necessary, to serve the purposes of sentencing set forth at 18 U.S.C. § 3553.  In support thereof, the Defense respectfully refers the Court to the case of *United States v. Crespo-Rios*, in which the defendant was convicted of possession of child pornography and transferring obscene material to a minor. *United States v. Crespo-Rios*, 2015 WL 6394256, Crim. No. 08-208, at *1 (D. Puerto Rico Oct. 19, 2015). His guideline range was 70 to 87 months, and he was sentenced to time served (two weeks' incarceration) and 15 years of supervised release. *Id*. at *1. In support of this sentence, the court found "the fact that [the defendant] is a productive member of society and gainfully employed,

that he has a strong support system of family, and that he also takes care of his elderly parents" as factors "weigh[ing] heavily" in favor of the sentence of time served. *Id*. Mr. Morris possesses similar positive characteristics: he has been not only gainfully employed in the United States Navy and a variety of other jobs, he also has the strong support system of his family and community.  In arriving at this sentence, the court in *Crespo-Rios* also considered the outdated nature of the current child pornography sentencing guidelines, the serious collateral consequences of conviction, and the fact that the goals of sentencing—particularly treatment and rehabilitation— could be achieved without a lengthy term of imprisonment. *Id*. at *2-*3. The same is true in this case.  The case of *United States v. Boyden*, 2007 WL 1725402, No. 06-20243 (E.D. Mich. June 14, 2007), is also instructive. The defendant in *Boyden* was found with 226 child pornographic images in temporary Internet files, 1,132 child pornographic images in unallocated space on his laptop, and nine video files depicting minors engaged in sexual activity. The defendant's guideline range was 41 to 51 months, and he was sentenced to one day of imprisonment followed by three years of supervised release (including 12 months in a Community Correction Facility). In support of this sentence, the court found the defendant's history and characteristics to be compelling: he served in the Army, was married with two adult daughters, and was a special education teacher for almost thirty years. *Id*. at *2.

Courts in this District also routinely impose below-guidelines sentences in cases involving possession of child pornography. *See, e.g., United States v. David Carver,* No: 2:21cr53 (guideline range 78 to 97 months; sentenced to 12 months and 1 day of imprisonment followed by 7 years of supervised release), *United States v. Joshua White*, No. 2:19cr132 (guideline range of 63 to 78 months; attributed with 2,775 images, including 37 videos; sentenced to 30 months' imprisonment followed by 10 years of supervised release); *United States v. William Michael*

*Davis*, No. 2:19cr166 (guideline range of 168 to 210 months; enhancement for obstruction of justice; sentenced to 36 months imprisonment);  *United States v. Marcel Stohner Antonio*, No. 2:17cr59 (guideline range of 78 to 97 months; attributed with at least 41,806 images of child pornography, including 19 videos; sentenced to 24 months' imprisonment); *United States v. Eric Walker*, No. 2:17cr99 (guideline range of 97 to 121 months; attributed with 42,830 images of child pornography, including 4,205 picture images and 515 videos (ranging from 29 seconds to 1 hour and 47 minutes); sentenced to 5 years' probation); *United States v. William Whitlock*, No. 2:15cr63 (guideline range of 37 to 46 months; attributed with 1,350 images of child pornography, including 17 videos; sentenced to 24 months' imprisonment followed by 10 years of supervised release); *United States v. Mark Schnuit*, No. 2:14cr105 (government asked for 97 months; attributed with at least 34 video files depicting violent and graphic sexual abuse of children; sentenced to 36 months' imprisonment); *United States v. Timothy Kook*, No. 2:12cr28 (guideline range of 78 to 97 months; attributed with 864 child pornographic images and obstructive conduct; sentenced to 41 months' imprisonment).

One final case which counsel feels important to note as compared to the instant matter is that of another defendant undersigned counsel's office recently represented on child pornography charges, in the case of *United States v. Joshua Hernandez*, No. 2:21cr48, wherein that defendant was offered and accepted a guilty plea to two counts of Possession of Child Pornography.  In that matter, the facts presented in the Pre-Sentence Report made Mr. Morris' case pale in comparison: Mr. Hernandez was attributed 418,404 images of child pornography, and there was reference to allegations of hands-on sexual abuse of a minor.  Mr. Hernandez's guidelines, due to not pleading guilty to Receipt, were 97 to 121 months, and of course he faced no mandatory minimum sentence.  Mr. Hernandez was sentenced to 110 months on each charge to run concurrently, well

below the guideline range for Mr. Morris.  Mr. Morris accepted the best available plea agreement offered to him by the Government, and he and his family have accepted that with it comes a mandatory minimum sentence of 5 years imprisonment.  The importance of noting this disparity, however, is to highlight the importance of 18 U.S.C. § 3553(a)(6) as it pertains to the sentencing currently before the Court.

As to special assessments, the Court must consider special assessments pursuant to 18 U.S.C. §§ 3014 and 2259A(a)(1).  In determining whether a defendant is indigent, courts "consider, among other things, the income, financial resources, and earning capacity of the defendant, as well as the burden that the [financial penalty] will impose upon the defendant and his dependents." *United States v. Lail*, 736 Fed. App'x 381, 382 (4th Cir. 2018) (per curiam) (quoting *United States v. Aramony*, 166 F.3d 655, 665 (4th Cir. 1999)); *see also United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017) ("[I]n the context of § 3014 indigency determinations, an analysis of both a defendant's current financial situation and his ability to pay in the future is appropriate in determining his 'non-indigent' status."). The factors under 18 U.S.C. § 3572, considered in determining the amount of assessments, include, among other things, the defendant's income, *earning capacity*, and financial resources, the burden that the fine will impose upon the defendant and any dependent, whether restitution is ordered or made and the amount of such restitution, and the expected costs to the government of any imprisonment or term of supervised release.  (emphasis added) 18 U.S.C. § 3572.

Counsel respectfully requests the Court consider the Defendant's future earning ability, and his ability to pay in the future.  While in prison Mr. Morris will not receive his full disability benefits from the Veterans' Administration until he is released from prison, Mr. Morris will once again receive his disability from the Veterans' Administration, his conviction in this matter, no

matter the sentence imposed, will effectively eliminate many employment opportunities.  Upon his release, he will have to take a giant step into a new career path – one undoubtedly lower-paying than any which would have been available to him prior to his conviction.

## SUMMATION

The Defendant Robert Scott Morris is before this Honorable Court for determination as to an appropriate sentence for the offense of Receipt of Child Pornography in violation of 18 U.S.C. 2252(a)(2).  While the Defense is cognizant of the currently applicable sentencing guideline range of 121 to 151 months, it is respectfully submitted that based upon the history and characteristics of Mr. Morris, as well as all factors in 18 U.S.C. §3553(a), an appropriate sentence for Robert Scott Morris would be for sixty (60) months imprisonment, followed by five (5) years of supervised release, and that said proposed sentence is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. §3553(a)(2).

Attached to this position paper are documents that the defendant respectfully requests be reviewed by the Honorable Court prior to the sentencing hearing, as follows:

A.  **Character Letters**
1. **Desire van de Sandt**
2. **Douglas Aaron Harsch**
3. **Pastor Michael Harvey**
4. **Reed McMahan**
5. **Shannon Jackson**
6. **Joseph Ferares**
7. **David Holland**
8. **Danielle Ferares**
9. **Erin Kandiyeli**
10. **Graham Reed Sutherlin**
11. **Reverend Jacques M. Kustritz, II**
12. **Casey Hill**
13. **Vera A. Ebert – Malone**
14. **Melissa Ballou**
15. **John C. Ballou**

16. **Patricia A. Morris**
17. **Steven Earl Morris**
18. **Steven R. Morris**
19. **Deborah O'Brien**

**B.  Celebrate Recovery Milestone Coins**

**C.  Bachelor's Degree Diploma**

**D.  Navy Discharge Paperwork with DD214s**

**E.  Military Evaluations**

**F.  Military Awards**

**G.  Military Veteran's Affairs Disability Rating**

**H.  Personal Photographs**

**I.  Letter from Dr. Alana R. Hollings**

**J.  Personal Statement from the Defendant, Robert Scott Morris**

**ROBERT SCOTT MORRIS**

By _____/s/_____
        Of Counsel

_____/s/_____
Greg D. McCormack, Esq.
Virginia State Bar No. 20112
Attorney for Robert Scott Morris
McCormack & McCormack
Attorneys at Law
484 Viking Drive, Suite 190
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
gdm@mccormackpc.com

26

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Rebecca Gantt, Esquire
Assistant U.S. Attorney
U.S. Attorney's Office
101 W. Main St., Suite 8000
Norfolk, VA 23510
Phone: 757-441-6331
Fax: 757-441-6689
Email: Rebecca.gantt@usdoj.gov

_____/s/_____
Greg D. McCormack, Esq.
Virginia State Bar No. 20112
Attorney for Robert Scott Morris
McCormack & McCormack
Attorneys at Law
484 Viking Drive, Suite 190
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
gdm@mccormackpc.com

I further certify that on this 1st day of December, 2022, I caused a true and correct copy of the foregoing Position of the Defendant with Respect to Sentencing Factors to be e-mailed to the following:

Robyn S. Basilio
United States Probation Officer
600 Granby Street
Suite 200
Norfolk, Virginia 23510
Phone: 757-222-7311

_____/s/_____
Greg D. McCormack, Esq.
Virginia State Bar No. 20112
Attorney for Robert Scott Morris
McCormack & McCormack
Attorneys at Law
484 Viking Drive, Suite 190
Virginia Beach, Virginia 23452
Phone:  757-463-7224
Fax:  757-463-5171
gdm@mccormackpc.com

28